UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN GIBSON,

    Petitioner,                                            CASE NO. 10-13364
                                                     HONORABLE ARTHUR J. TARNOW
v.                                                   UNITED STATES DISTRICT JUDGE

LINDA TRIBLEY,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Adrian Gibson, ("Petitioner"), presently on parole supervision with the Michigan Department of Corrections through the Detroit Metro Parole Office, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. §2254. In his application, Petitioner challenges his conviction and sentence for (1) felon in possession of a firearm, M.C.L.A. 750.224f, and (2) possession of a firearm during the commission of a felony, M.C.L.A. 750.227b. Petitioner was acquitted of the additional charges of two counts of first-degree premeditated murder, M.C.L.A. 750.316 (1)(a), and assault with intent to commit murder, M.C.L.A. 750.83. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

Petitioner, Adrian Gibson, was convicted of the above offenses following a bench trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by

1

the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a July 27, 2006, shooting in Detroit. Toby Adams and Angela Jackson were killed, and Sigmund Horn was injured. It was alleged that defendant and Adams had a "beef" about control of the drug trade in the area. The principal evidence implicating defendant was the preliminary examination testimony of Jeffrey Moore and Kareem Garrett that was read into the record at trial because both witnesses were deemed "unavailable." After hearing the evidence, the trial court found that although it had a "gut feeling" that defendant was the shooter, the evidence did not establish beyond a reasonable doubt the charged crimes of first-degree premeditated murder and assault with intent to commit murder. However, the trial court did find that there was sufficient credible evidence that defendant possessed a MAC-11 firearm on the night of the incident.
>
> Before the offense, Adams testified at an unrelated proceeding, that on June 22, 2006, DeAndre Henry flagged down his car as he was driving on Whitmore Street in Detroit and Henry was with defendant. Adams stopped his car and Henry asked him if he had knocked on his hotel door. After Adams answered no, Henry looked at defendant, and defendant allegedly told Henry to shoot Adams. Adams indicated that Henry pulled out a gun and shot him multiple times, but Adams managed to escape. Adams appeared in court and testified about the shooting on July 17, 2006.
>
> At trial, Horn testified that on the evening of July 27, 2006, he parked his car outside his apartment building, and Adams and Jackson were sitting nearby in chairs on the sidewalk. Horn heard a male voice state, "I got you now." The voice emanated from where Adams and Jackson were sitting. Horn then heard several shots. After Horn was shot once and fell, an unidentified person approached him and shot him two more times. Adams was later found under Horn's car, having been shot 15 times. Jackson was still seated in her chair, and had been shot in the head, hand, and chest. On Jackson's lap was a purse containing a .40 caliber firearm, and inside her bra were packets of marijuana and suspected cocaine. Police recovered 26 nine-millimeter casings and five fired bullets at the scene. Twenty-five of the casings were fired from the same weapon. A firearms expert explained that a MAC-11 firearm could have been the weapon used in the shooting.
>
> According to Moore's preliminary examination testimony, on the night of the shooting, he was sitting in his car in an alley near Whitmore Street waiting for his girlfriend. Moore heard gunshots and, shortly afterward, saw defendant and "Carl" running toward him. He described defendant as wearing a black hoodie sweatshirt with an object "swinging from off his waist" underneath the hoodie. Defendant got into the front passenger seat of Moore's car and Carl got into the back seat. Once defendant was inside the car, Moore saw that the object swinging underneath

> defendant's hoodie was a black MAC-11 nine-millimeter firearm. Moore had seen defendant with the same MAC-11 firearm "a couple of days" before the shooting. Moore did not see a weapon in Carl's possession. After defendant directed Moore to "pull off," Moore immediately drove away and eventually dropped off the men near defendant's mother's residence. Moore testified that the day after the shooting, he spoke with defendant outside a house on Whitmore Street, and defendant allegedly talked about "people running their mouths" and, in reference to Adams, stated that "he had to handle that." Moore indicated that he was aware that Adams had testified against Henry in court.
>
> According to Garrett's preliminary examination testimony, a couple of weeks before the shooting, defendant asked him to "kill" Adams and showed him a MAC-11 firearm with a shoulder strap. Garrett was aware that Adams and defendant's good friend, Henry, had a disagreement. Garrett did not take the firearm or agree to kill Adams. Garrett testified that on the night of the shooting, he heard gunshots and "a minute or two later" saw a car drive past him. Moore was driving the car, and defendant, who was wearing a hoodie, and a third unidentified male passenger were also inside. After the shooting, Garrett saw defendant on Whitmore Street and asked defendant if he had "a job" for him. Defendant responded that he had a job for him, but "he took care of it" himself.

*People v. Gibson,* No. 283508, * 1-2 (Mich.Ct.App. May 21, 2009).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 485 Mich. 898, 772 N.W.2d 424 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:
I. The evidence was insufficient to support the verdicts, the verdicts are inconsistent, and defendant has been denied due process of law pursuant to US CONST AM XIV.

II. Defendant was denied his right of confrontation by the erroneous admission, over objection, of witnesses' preliminary examination testimony. US CONST AM VI.

III. Defendant was denied due process of law by being sentenced based on inaccurate information, improperly scored guidelines, and improper assumptions; he should be resentenced and his presentence report should be corrected to eliminate irrelevant information. US CONST AM XIV.

3

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh*

*v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.  DISCUSSION

### A.  Sufficiency of the Evidence and Inconsistent Verdict.

Petitioner first contends 1) that there was no evidence upon which a verdict of guilt on the firearm charges could have been based and 2) the trial court rendered an inconsistent verdict by acquitting him of two counts of first-degree premeditated murder and assault with intent to commit murder, but then convicting him of being a felon in possession of a firearm and felony firearm.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote

5

omitted)(emphasis in the original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico,* 506 F. 3d 444, 448 (6th Cir. 2007). The elements of felon in possession of a firearm in Michigan include: (1) a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that at the time of possession, less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Id.*

Petitioner initially contends that this Court should set aside the verdict because the judge's decision to find him guilty of the firearm charges is inconsistent with her decision to acquit him of the murder and assault with intent to commit murder charges.

The Michigan Court of Appeals indicated in rejecting petitioner's claim, the trial judge's findings of fact and conclusions of law were not inconsistent:

> The trial court's verdict was not factually inconsistent. It is evident from the trial court's factual findings that it determined that Moore's and Garrett's testimony that they each personally observed defendant in possession of a MAC-11 weapon, and that he was in Moore's car on the night of the shooting, was credible. These findings support defendant's convictions of felon in possession and felony-firearm, and are not inconsistent with defendant's acquittal of the other charges. The trial court could logically and consistently find that the witnesses' testimony was sufficient to establish beyond a reasonable doubt that defendant possessed a MAC-11 firearm, and at the same time find that defendant's identity as the shooter was not established beyond a reasonable doubt.

*People v. Gibson,* No. 283508, Slip. Op. at * 4.

The trial judge's factual findings determined that Moore's and Garrett's testimony established that they personally observed petitioner in possession of a MAC-11 weapon. Petitioner's identity as the shooter was not established beyond a reasonable doubt; however, the trial court could logically find that the witnesses' testimony was sufficient to establish that petitioner possessed a MAC-11 firearm during the commission of the crime beyond a reasonable doubt. The trial court's decision to acquit petitioner of the murder and assault charges while convicting him of the charges of felon in possession and felony firearm was not inconsistent.

Petitioner further claims that the evidence was insufficient because the witnesses were not credible. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of

sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* To the extent that petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, petitioner would not be entitled to habeas relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

### B. The Right of Confrontation.

Petitioner next contends that his right to confrontation was violated when the prosecutor was permitted to read Jeffrey Moore's preliminary examination testimony after Moore claimed at trial that he had no recollection of the events of the night in question and Kareem Garrett's preliminary examination testimony into evidence after the prosecutor was unable to obtain his presence at trial.

When prosecutors seek to admit a nontestifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *overruled on other grounds* at 408 Fed Appx 873 (6th Cir. 2010); *cert. den*. 132 S Ct 125 (2011)(citing *McCandless v. Vaughn*, 172 F. 3d 255, 265 (3rd Cir. 1999)).

The Michigan Court of Appeals concluded that Moore's preliminary examination testimony was admissible because Moore stated numerous times at trial that he did not recall any facts from the night of the shooting, his testimony at the preliminary

8

examination, or the statement he made to the police. The prosecutor attempted to refresh Moore's memory with the contents of his statement, but Moore continued to profess that he had no recollection. Moore's claimed lack of memory brought his preliminary examination testimony within the scope of M.R.E. 804(a)(3) and M.R.E. 804(b)(1). Moore's lack of memory qualified him as an unavailable witness under rule 804(a)(3). *See U.S. v. Rodgers*, 4 F. 3d 995 (Table); 1993 WL 330642, * 3 (6th Cir. August 30, 1993).

With respect to Garrett's preliminary examination testimony, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Gibson,* Slip. Op. at * 5-6, the record establishes that the prosecution made diligent good-faith efforts to secure Garrett's presence at petitioner's trial:

> With regard to Garrett, defendant argues that the trial court abused its discretion in finding that the prosecution exercised due diligence in attempting to produce him for trial. On November 30, 2007, a subpoena was issued for Garrett to appear at trial on December 3, 2007. When Garrett did not appear, the trial court held a due diligence hearing on December 4, 2007. At the hearing, the prosecutor explained that the police and the prosecution had been very successful in producing Garrett for prior hearings, and had no indication that he would not appear for trial. Officer Anthony O'Rourke testified that on at least three prior occasions the police were successful in locating Garrett in the Palmer Park area of Detroit or at his residence on Lee Place and bringing him to court. O'Rourke had also driven Garrett to his residence on Lee Place after one hearing. With regard to the trial subpoena, O'Rourke testified that he was instructed to serve Garrett with the subpoena and obtain his phone number so he could be reached for further instructions. O'Rourke explained that the police searched for Garrett for a week before the subpoena was served. When O'Rourke went to Garrett's last known residence at 1410 Lee Place, he was told that Garrett and his mother had moved to Pingree Street. On the Friday before trial began, O'Rourke went to the Pingree address to serve Garrett with the subpoena. O'Rourke met Garrett and successfully delivered the subpoena. O'Rourke explained to Garrett where and when he needed to report and advised him that a failure to do so would result in his arrest. O'Rourke had Garrett sign the document, gave him

a copy, and had him write down his phone number. Over the weekend, Sergeant Gary Diaz attempted to call Garrett and a female told him that Garrett was not there. The prosecutor also made repeated calls to the phone number provided by Garrett. When Garrett did not appear on December 3rd, the trial court issued a witness detainer for Garrett's arrest.

On the morning of December 4, 2007, Diaz went to the Pingree residence to locate Garrett. Through the front window, Diaz could see Garrett sleeping on a couch. Diaz indicated that he banged on the window and Garrett woke up. After Diaz called Garrett's name, Garrett looked Diaz "in the face" and walked to the back of the house, and Diaz heard the back door slam. In the back, Diaz saw a set of footprints in the snow leading from the house over a fence into the next yard. O'Rourke testified that he also went to the Pingree address at two separate times on December 4, 2007, but was unsuccessful in finding Garrett. Two other officers attempted to locate Garrett in the Palmer Park area. The prosecutor indicated that Garrett left a message on her phone, indicating that he was "homeless" and to "stop going over to [his] mother's house."

The trial court found that the prosecution had exercised due diligence, and that Garrett's preliminary examination testimony would be allowed. The trial court stated that Garrett's action of fleeing the police when they came to the Pingree residence indicated his intention to make himself unavailable. Despite its ruling, the trial court gave the prosecution another day to locate Garrett. That night, police officers searched for Garrett in the Palmer Park area and at the Pingree residence, but were unsuccessful. *Id.*

In the present case, the police made numerous attempts to locate Garrett. When the police finally caught up with Garrett, he ran away from the police, thus, demonstrating an intent to make himself unavailable for trial. This Court concludes that the prosecution and law enforcement made a good faith effort to locate Garrett and present him at trial. *See Winn v. Renico,* 175 Fed.Appx. 728, 739 (6th Cir. 2006); *See also Pillette,* 630 F. Supp. 2d at 804.

Next, the trial court must satisfy the "indicia of reliability" requirement in order to admit the preliminary examination testimony of the witnesses. In order to satisfy this requirement, the prosecution must demonstrate that the defendant had an adequate

10

opportunity to cross-examine the declarant at the preliminary examination. Moore's and Garrett's former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, petitioner and his counsel were present, and the witnesses were subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Pillette,* 630 F. Supp. 2d at 804; *Eastham v. Johnson*, 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). Counsel's cross-examination at the preliminary examination successfully attacked Moore's and Garrett's testimony, rendering it almost completely incredible, thereby limiting its use later by the trial court judge. Moreover, even if counsel did not take full advantage of the opportunity to cross-examine Moore and Garrett at the preliminary examination, he had an unlimited opportunity to do so. Therefore, the admission of the preliminary examination testimony at petitioner's trial did not violate his right to confrontation. *See Glenn v. Dallman,* 635 F. 2d 1183, 1187 (6th Cir. 1980); *Havey v. Kropp,* 458 F. 2d 1054, 1057 (6th Cir. 1972).

**C. Sentencing.**

Petitioner finally brings a number of challenges to his sentencing.

Petitioner first alleges that the trial court judge incorrectly scored several of the sentencing guidelines variables. Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). An incarcerated habeas petitioner's challenge to the validity of his or her conviction

11

satisfies the case-or-controversy requirement because the incarceration constitutes a concrete injury which can be redressed by the invalidation of the conviction. See Spencer v. Kemna, 523 U.S. 1, 7 (1998). Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole -- some "collateral consequence" of the conviction -- must exist if the suit is to be maintained in federal court and not considered moot. Id. The scoring of the minimum range of Petitioner's sentence would effect Petitioner's eligibility for parole. Petitioner is already on parole. Being that Petitioner is currently on parole, his sentencing guideline claim is now moot.

Even if Petitioner's guideline claim were not moot, a challenge to an incorrectly scored or calculated sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

Petitioner further argues that he was erroneously scored for the two pre-meditated murder charges and intent to commit murder charge of which he had been acquitted. At

12

sentencing, the trial court specifically stated that although there was insufficient evidence to prove the murder and assault offenses beyond a reasonable doubt, "by a preponderance of the evidence, [it] believed that [defendant is] the person who shot these people, based on all of the testimony together."

This conclusion may be inconsistent with the rational of the new Supreme Court Case. That is, to increase a sentence, the facts relied upon must be proven beyond a reasonable doubt.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States,* ---- U.S.----; 2013 WL 2922116, * 4 (U.S. June 17, 2013). In so holding, the Supreme Court overruled *Harris v. United States,* 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Id.* at * 6. At the time of petitioner's conviction and sentence, *Harris* was good law. In addition, there is no indication that the Supreme Court made their holding in *Alleyne* retroactive to cases on collateral review. A federal district court "may only grant habeas relief [if it finds] that the [state] trial court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F. 3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)). In addition, "[t]he law in

13

question must have been clearly established at the time the state-court decision became final, not after." *Id.* (citing *Williams v. Taylor*, 529 U.S. at 380). Because the Supreme Court at the time of petitioner's conviction did not require that facts that increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, petitioner is not entitled to habeas relief on his claim. Any error by the trial court in calculating his guideline score does not merit habeas relief. Furthermore, petitioner's sentencing issue is moot and not subject to habeas relief.

**4. A Certificate of Appealability**.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [1] 28 U.S.C. § 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review,

---

[1] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Gibson is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt.# 1).

but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Gibson is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt.# 1).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner will be granted leave to appeal *in forma pauperis.*

                                S/Arthur J. Tarnow
                                Arthur J. Tarnow
                                Senior United States District Judge

Dated: July 3, 2013

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on July 3, 2013, by electronic and/or ordinary mail.

                                S/Catherine A. Pickles
                                Judicial Assistant